**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PROFESSIONAL INVESTIGATING AND CONSULTING AGENCY, INC. D/B/A PICA CORPORATION, | ) ) ) ) | Case No.: 2:19-cv-03304-ALM-KAJ |
| Plaintiff, | ) ) | Judge: Algernon L. Marbley |
| vs. | ) ) | Magistrate Judge: Kimberly A. Jolson |
| SOS SECURITY LLC, *et al.*, | ) ) | |
| Defendant. | ) | |

**DEFENDANTS SOS SECURITY, LLC AND EDWARD SILVERMAN'S**
**MOTION TO DISMISS**

Defendants SOS Security LLC and Edward Silverman, pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, hereby move to dismiss this action with prejudice for failure to state a claim and for lack of personal jurisdiction over Defendant Edward Silverman for the reasons set forth in the accompanying Memorandum.

Respectfully submitted,

*/s/ Gregory D. Brunton*
Gregory D. Brunton    (0061722)
**GORDON & REES LLP**
41 South High Street, Suite 2495
Columbus, Ohio 43215
T: (614) 340-5558
F: (614) 360-2130
gbrunton@grsm.com

*Attorney for Defendants SOS Security LLC*
*and Edward Silverman*

## MEMORANDUM IN SUPPORT

The crux of Plaintiff Professional Investigation and Consulting Agency, Inc.'s ("Plaintiff" or "PICA") claims against Defendants SOS Security, LLC ("SOS") and Edward Silverman ("Silverman") is that SOS acquired confidential information as part of a failed acquisition of PICA by SOS and then used this confidential information to "steal" PICA's customers. Plaintiff's tort claims based on this conduct are all preempted by the Ohio Uniform Trade Secrets Act, which precludes any alternative theories in tort for claims arising from the misappropriation of alleged trade secrets. Further, Plaintiff's breach-of-contract and misappropriation claims fail on their merits for lack of damages, as Plaintiff has failed to plausibly allege how Defendants ever used the allegedly misappropriated trade secrets to Plaintiff's disadvantage. Finally, the Court should dismiss the claims against Silverman for lack of personal jurisdiction, as the Complaint is devoid of any allegations establishing that Silverman had minimum contacts with the State of Ohio.

## I.    STATEMENT OF ALLEGED FACTS

SOS "operated a business provided contract related services for its customers." (Compl. ¶ 12, ECF No. 1-1.) PICA "operated a business providing security investigating and consulting services and executive protection and secure transport services for its customers." (*Id.* ¶ 13.) In or about October 2014, Edward Silverman, SOS's Chief Executive Officer, allegedly approached Defendant Rodolfo Diaz ("Diaz"), PICA's Chief Operating Officer and a 5% shareholder, to discuss SOS's possible acquisition of PICA. (*Id.* ¶ 14.) On December 1, 2014, SOS and PICA entered into a Confidentiality and Non-Disclosure Agreement (the "NDA") so that PICA could disclose confidential information to SOS as part of the acquisition process, as requested by SOS. (*Id.* ¶¶ 16–18 & Ex. 1.)

Pursuant to the NDA, from December 2014 to April 2015, PICA provided SOS with alleged trade secrets and confidential information, including: "(i) PICA's customers and potential

customers; (ii) PICA's vendors and resources; (iii) the services PICA provided to its customers and proposed to provide to potential customers and PICA's know-how related to services, sales, marketing and opportunities pending; (iv) the rates that PICA charges its customers and proposed to charge potential customers; (v) the personnel PICA used to provide its services to customers and the rates PICA paid those personnel; and (vi) PICA's general and administrative overhead, including full financial statements and revenues and margins per client for a five (5) year period." (Compl. ¶ 18.)

Plaintiff alleges that Diaz and Silverman had agreed to work together to steal PICA's customers and trade secrets for the benefit of SOS. (Compl. ¶ 19.) Diaz left PICA in May 2015, but SOS and PICA continued to explore opportunities together while the acquisition process was postponed. (*Id.* ¶¶ 19–20.) SOS and PICA continued to work on projects together, mostly in South America, but PICA alleges that SOS used these projects to steal PICA's customers. (*Id.* ¶¶ 21–24.) PICA also alleges that SOS improperly used confidential information in violation of the NDA. (*Id.* ¶ 26.) On June 1, 2017, after expiration of Diaz's covenants not to compete, Diaz was hired by SOS. (*Id.* ¶ 27.) Two weeks later, "SOS announced the acquisition of AS Solutions, a firm specializing in executive protection and secure transport and a former partner of PICA." (*Id.* ¶ 28.)

## II. PROCEDURAL HISTORY

PICA filed this action in the Franklin County, Ohio Court of Common Pleas on June 27, 2019. (*See generally* Compl.) The Complaint alleges the following causes of action:

- **Count I – Breach of Contract (against SOS only):** Count I alleges that "SOS breached the NDA by using PICA's confidential information and trade secrets for improper purposes." (Compl. ¶ 34.)

- **Count II – Fraud in the Inducement (against SOS and Silverman):** Count II alleges that SOS and Silverman "tortiously induced PICA to sign the NDA and give up its confidential information." (Compl. ¶ 37.) Count II further alleges that SOS and Silverman falsely represented that they intended to keep this information confidential and that PICA relied on this misrepresentation to its detriment. (*Id.* ¶¶ 38–41.)

- **Count III – Conspiracy to Commit Fraud (against SOS, Silverman, and Diaz):** Count III alleges that Diaz, Silverman, and SOS conspired to fraudulently induce PICA to give up its confidential information and trade secrets and using these trade secrets to PICA's detriment. (Compl. ¶¶ 43–44.)

- **Count IV – Breach of Fiduciary Duty/Violation of R.C. 1701.641 (against Diaz only):** Count IV alleges that Diaz breached his fiduciary duties owed to PICA by inducing PICA to disclose its trade secrets and confidential information. (Compl. ¶ 49.)

- **Count V – Aiding and Abetting Breach of Fiduciary Duty (against SOS and Silverman):** Count V alleges that Silverman and SOS assisted Diaz in breaching his fiduciary duties by inducing PICA to disclose confidential information and trade secrets. (Compl. ¶ 54.)

- **Count VI – Misappropriation of Trade Secrets/Violation of R.C. 1333.61 et seq. (against SOS only):** Count VI alleges that "SOS misappropriated PICA's confidential information and trade secrets." (Compl. ¶ 60.) Plaintiff seeks damages pursuant to R.C. 1333.63 and attorneys' fees pursuant to R.C. 1333.64(C). (*Id.*)

- **Count VII – Tortious Interference with Business Relationships (against SOS only):** Count VII alleges tortious interference with PICA's relationships with its clients

3

by SOS's alleged acquisition and misuse of PICA's confidential information and trade secrets. (Compl. ¶ 66.)

- **Count VIII – Conspiracy to Tortiously Interfere with Business Relationships (against SOS, Silverman, and Diaz):** Count VIII alleges that "Diaz and Silverman conspired and agreed with SOS to assist SOS, and did assist SOS, in tortiously interfering with PICA's advantageous business relationships with PICA's clients." (Compl. ¶ 70.)

- **Count IX – Common Law Unfair Competition (against SOS only):** Count IX alleges a common law claim for unfair competition based on SOS's allegedly improper acquisition and use of PICA's trade secrets and confidential information. (Compl. ¶ 74.)

- **Count X – Quantum Meruit (against SOS only):** Count X alleges that PICA provided benefits to SOS as part of the acquisition process that were never repaid. (Compl. ¶ 77–80.)

On July 30, 2019, Defendants jointly removed this action to this Court on the basis of diversity jurisdiction. (*See generally* Not. Removal, ECF No. 1.)

## III. ARGUMENT AND LAW

### A. The Complaint fails to state a claim against SOS and Silverman.

#### 1. Rule 12(b)(6) standards.

A defendant may move to dismiss a complaint where it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To avoid dismissal under Rule 12(b)(6), a complaint must provide sufficient facts to state a claim that is plausible on its face." *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 580 (6th Cir. 2016) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint that offers 'labels and conclusions,' 'a formulaic

4

recitation of the elements of a cause of action,' or 'naked assertion[s]' devoid of 'further factual enhancement' will not survive a motion to dismiss." *Daniel v. Goodyear Tire/CBSD*, 6th Cir. No. 18-1136, 2018 U.S. App. LEXIS 29345, at *2–3 (Oct. 17, 2018) (quoting *Twombly*, 550 U.S. at 555, 557). These pleading standards apply equally to a complaint that was originally filed in state court and later removed to federal court. *See, e.g.*, *McDaniel v. PNC Bank*, 2012 U.S. Dist. LEXIS 13375, at *5 (S.D. Ohio Feb. 3, 2012) ("[A]ll claims, once removed to federal court, are subject to federal pleading requirements.").

> **2.    Plaintiff's tort claims (including all claims against Silverman) are preempted by the Ohio Uniform Trade Secrets Act.**

All of Plaintiff's claims, other than its breach-of-contract and misappropriation claims, are preempted by the Ohio Uniform Trade Secrets Act ("OUTSA"). The OUTSA broadly preempts "conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret." R.C. 1333.67(A).[1] This preemption provision applies to

---

[1] "Trade secret" is defined as:

> information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

R.C. 1333.61(C). Plaintiff has alleged that the confidential information at issue in this case satisfies this definition. (Compl. ¶¶ 18, 57–59.) Further, the OUTSA's preemption provision applies to all claims based on misappropriation of confidential information, even if it falls short of the statutory definition of a trade secret. *See Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*, 649 F. Supp. 2d 702, 720 (N.D. Ohio 2009) ("[C]ourts have generally found that the UTSA preempts 'all alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade-secret

"causes of action that are based in some way on misappropriation of trade secrets." *Stolle Mach. Co. v. Ram Precision Indus.*, 605 F. App'x 473, 484 (6th Cir. 2015); *see also Phoenix Lighting Grp. LLC v. Genlyte Thomas Grp. LLC*, 9th Dist. Summit No. 28082, 2018-Ohio-2393, ¶ 81 ("[C]ourts applying OUTSA generally seem to have subscribed to the majority rule that the statute should be broadly interpreted so as to abolish all other causes of action for theft, misuse, or misappropriation of any confidential or secret information."). "The test to determine whether a state law claim is displaced by OUTSA is to determine whether 'the claims are no more than a restatement of the same operative facts' that formed the basis of the plaintiff's statutory claim for trade secret misappropriation." *Stolle Mach.*, 605 F. App'x at 485 (quoting *Thermodyn Corp. v. 3M Co.*, 593 F. Supp. 2d 972, 989 (N.D. Ohio 2008)) (internal quotation marks omitted).

Here, Plaintiff's claims for fraud in the inducement (Count II), conspiracy to commit fraud (Count III), aiding and abetting breach of fiduciary duty (Count V), tortious interference (Count VII), conspiracy to tortiously interfere (Count VIII), common law unfair competition (Count IX), and quantum meruit (Count X) are all restated claims for misappropriation of trade secrets based on the same operative facts as Plaintiff's misappropriation claim under the OUTSA. The gist of each of these claims is that SOS and Silverman improperly acquired and used PICA's confidential information and trade secrets to PICA's detriment. (*See* Compl. ¶¶ 18, 26, 37–40, 43–44, 49, 54, 66, 70, 73–74 (alleging that Defendants misappropriated PICA's confidential information and trade secrets).)

Accordingly, Counts II, III, V, VII, VIII, IX, and X are preempted by the OUTSA, and the Court should therefore dismiss these claims with prejudice. Further, because none of the surviving

---

status (e.g., idea misappropriation, information piracy, theft of commercial information, etc.).'" (quoting *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 655 (E.D. Tenn. 2004))).

claims are alleged against Silverman individually, the Court should dismiss Silverman as a party to this case.

### 3. Plaintiff's breach-of-contract claim (Count I) against SOS fails for lack of damages.

Although contract claims are beyond the scope of the OUTSA's preemption provision, Plaintiff's breach-of-contract claim against SOS (Count I) fails for lack of damages. This count is based on SOS's allegedly breach of the NDA "by using PICA's confidential information and trade secrets for improper purposes, which went far beyond the terms of the NDA and SOS' PICA Acquisition Process, to gain an unfair advantage over PICA and to solicit its customers." (Compl. ¶ 34.) This count fails on the face of the Complaint because Plaintiff does not allege any damages caused by this supposed breach, as required under Ohio law. *See, e.g.*, *Anchor v. O'Toole*, 94 F.3d 1014, 1020 (6th Cir. 1996) ("In Ohio, damages are an essential element of a plaintiff's claim for breach of contract."); *Wildi v. Hondros College*, 10th Dist. Franklin No. 09AP-346, 2009-Ohio-5205, ¶ 13 (listing damages as essential element of breach-of-contract claim and affirming trial court's dismissal for failure to allege cognizable contract damages).

In particular, the Complaint fails to plausibly allege how any of the confidential information or trade secrets that SOS supposedly used or disclosed actually caused harm to PICA.[2] Rather, the Complaint makes the conclusory allegation that SOS had PICA's confidential materials and that SOS somehow used these materials to steal PICA's customers. (Compl. ¶¶ 18, 26, 34.) There are no plausible allegations asserting the specific trade secrets or confidential information

---

[2] The Complaint also cites a provision of the NDA related to solicitation of or acceptance of work from clients or potential clients disclosed pursuant to the NDA. (Compl. ¶ 32.) The Complaint does not explicitly allege breach of this particular provision, nor are there allegations that any of the customers or potential customers identified in the Complaint were disclosed to SOS pursuant to the NDA or, if they were, that PICA did not authorize SOS's solicitation of work from these clients.

that SOS may have used or explaining how any of this information gave SOS an advantage it otherwise wouldn't have had.

None of the specific business transactions identified in the Complaint establish damages. The Complaint identifies three sets of projects or customers that SOS supposedly "stole" from PICA: (1) projects in Latin America for a variety of clients (including projects related to the 2016 Olympics) that were the topic of meetings in 2015, (*see* Compl. ¶¶ 21–23); (2) work for Microsoft, (*see id.* ¶ 24); and (3) requests for proposals referred by PICA to SOS for unnamed clients, (*see id.* ¶ 25). None of these allegations set forth how the use of confidential information disclosed pursuant to the NDA harmed PICA. The Latin American projects were supposedly undermined by the departure of a PICA employee and the exclusion of PICA from the SOS's work. (*See* Compl. ¶ 21–22.) The work for Microsoft was allegedly lost due to SOS's disparaging statements about PICA's work rather than the use of any confidential information. (*Id.* ¶ 24.) The allegations with respect to the requests for proposals only allege lack of payment, without any attribution of this loss of work to the use of confidential information. (*Id.* ¶ 25.) Plaintiff fails to plausibly allege how it lost any particular project or business due to SOS's unauthorized use of confidential information. Accordingly, the Court should dismiss Count I for failure to state a claim.

### 4. Plaintiff's claim for misappropriation of trade secrets (Count VI) fails for lack of damages.

Plaintiff's claim against SOS for misappropriation of trade secrets under the OUTSA (Count VI) solely seeks compensatory damages under R.C. 1333.63(B) and attorney fees under R.C. 1333.64(C). (Compl. ¶ 61.) As with Plaintiff's breach of contract claim, the misappropriation claim fails to plausibly allege any damages resulting from or caused by SOS's alleged appropriation of confidential information or trade secrets from PICA. *See supra* Section III.A.3.

8

Without proof of compensable damages caused by an alleged misappropriation of trade secrets, Plaintiff is not entitled to relief under R.C. 1333.63(B) or R.C. 1333.64(C).

> **5.   To the extent not preempted by the OUTSA, Plaintiff's tortious interference claims (Counts VII and VIII) are barred, as a matter of law, by the statute of limitations.**

To the extent Plaintiff's claims based on tortious interference (Counts VII and VIII) are not preempted by the OUTSA, they are time-barred on the face of the Complaint. The only conduct allegedly constituting tortious interference consists of misappropriation of trade secrets—which is clearly preempted by the OUTSA—and SOS's supposed "theft" of Microsoft as a client. (Compl. ¶¶ 66–67.) To the extent SOS's claims for tortious interference with PICA's relationship with Microsoft do not arise out of the same conduct as Plaintiff's trade secret misappropriation claim, these claims would be barred by the statute of limitations as a matter of law.

Here, the tortious interference claims related to Microsoft are based solely on SOS's alleged defamation of PICA, i.e., SOS falsely taking credit for PICA's work and disparaging and diminishing PICA's services to Microsoft. (Compl. ¶¶ 24, 67.) Where a tortious interference claim is based on defamatory statements, the one-year defamation statute of limitations applies, which accrues at the time of publication. *See, e.g.*, *Hester v. Case W. Reserve Univ.*, 8th Dist. Cuyahoga No. 107492, 2019-Ohio-1991, ¶¶ 11, 19; *Smith v. Nat'l W. Life*, 8th Dist. Cuyahoga No. 104898, 2017-Ohio-4184, 92 N.E.3d 169, ¶¶ 11–13. Plaintiff's related civil conspiracy claims against Diaz and Silverman are subject to the same statute of limitations. *See, e.g.*, *Carter v. Nat'l City Bank*, No. 1:17-cv-508, 2018 U.S. Dist. LEXIS 122683, at *6 (S.D. Ohio July 23, 2018) ("[T]he applicable statute of limitations for filing a civil conspiracy [claim] is the relevant limitations statute for the underlying cause of action." (quoting *In re Fair Fin. Co.*, 834 F.3d 651, 679 (6th Cir. 2016)) (second alteration in original)).

As alleged in the Complaint, any tortious interference related to the "theft" of Microsoft as a client occurred no later than July 2017, when SOS "complet[ed] its scheme to steal PICA's customers." (Compl. ¶ 27.) The Complaint does not allege any conduct or statements by SOS, Diaz, or Silverman after that date. Thus, any alleged defamatory statements about PICA made to Microsoft occurred no later than July 2017, and the statute of limitations on Plaintiff's tortious interference claims related to these statements expired no later than July 2018. Plaintiff did not file suit until June 2019, nearly a year later. Accordingly, to the extent Plaintiff's tortious interference is not preempted by the OUTSA, it would be time-barred as a matter of law.

6.    **To the extent not preempted by the OUTSA, Plaintiff's quantum meruit claim (Count X) fails because PICA did not confer any benefits for the purpose of receiving payment.**

To the extent Plaintiff's quantum meruit claim against SOS (Count X) is not preempted by the OUTSA, this claim fails as a matter of law on its merits. To establish a claim in quasi-contract for quantum meruit damages, Plaintiff must plead and prove that:

> (1) [v]aluable services were rendered or materials furnished, (2) for the person sought to be charged, (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him, (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff, in performing such services was expecting to be paid by the person sought to be charged.

*Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, 99 F. Supp. 791, 807–08 (S.D. Ohio 2015) (quoting *Sonkin & Melena Co., L.P.A. v. Zaransky*, 83 Ohio App. 3d 169, 175, 614 N.E.2d 807 (1992)) (internal quotation marks omitted) (alteration in original). Further, Plaintiff has the burden of pleading and proving that "that the defendant either requested or assented to such conduct under conditions precluding an inference that the plaintiff acted gratuitously." *Lucas v. Costantini*, 13 Ohio App.3d 367, 369, 469 N.E.2d 927, 930 (12 Dist. 1983).

Here, Plaintiff has failed to plausibly allege that it conferred benefits on SOS other than gratuitously. Although the Complaint alleges that SOS requested and received confidential

information as part of its acquisition process, there are no similar allegations that SOS actually requested PICA to perform any of the services that it provided without payment. Instead, the Complaint shows that these services were provided to help close the acquisition deal with SOS. (*See* Compl. ¶ 80 ("Given that SOS never closed the deal to acquire PICA, which is the only reason that PICA provided the services and performed the work for SOS . . . .").) Thus, PICA did not provide any services on the expectation of being paid directly for the services. Rather, PICA admits that it provided services solely on the expectation that doing so would convince SOS to complete its acquisition of PICA. The circumstances, as alleged, therefore fail to plausibly establish that SOS should have anticipated having to repay PICA for the services provided in the event the acquisition process was unsuccessful. Accordingly, Plaintiff's claim against SOS for quantum meruit (Count X) fails on its merits to the extent not preempted by the OUTSA.

**B.** **The Court lacks personal jurisdiction over Silverman.**

**1.** **Rule 12(b)(2) standards.**

Under Federal Rule of Civil Procedure 12(b)(2), the Court can dismiss an action for lack of personal jurisdiction. In diversity cases such as this, federal courts apply the law of the forum state to determine whether personal jurisdiction exists. *Nationwide Mut. Ins. Co. v. Tryg Internatl. Ins. Co.,* 91 F.3d 790, 793 (6th Cir. 1996). In order to establish personal jurisdiction over the Defendants, Plaintiff must show that: (1) the Defendants are amenable to suit under Ohio's long-arm statute, R.C. 2307.382, **and** (2) the due process requirements of the U.S. Constitution are met. *See, e.g.*, *Nyce v. Jones*, No. 2:19-cv-13, 2019 U.S. Dist. LEXIS 97898, at *13–14 (S.D. Ohio June 11, 2019).

The Ohio long-arm statute provides:

A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

11

(1)     Transacting any business in this state;

(2)     Contracting to supply services or goods in this state;

(3)     Causing tortious injury by an act or omission in this state;

(4)     Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5)     Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6)     Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

(7)     Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.

(8)     Having an interest in, using, or possessing real property in this state;

(9)     Contracting to insure any person, property, or risk located within this state at the time of contracting.

R.C. 2307.382. "If the Court finds that personal jurisdiction is lacking under Ohio's long-arm statute, it need not consider whether the exercise of jurisdiction would comport with due process." *Nyce*, 2019 U.S. Dist. LEXIS 97898, at *14–15.

With respect to the due-process inquiry, "Ohio law does not appear to recognize general jurisdiction over non-resident defendants, but instead requires that the court find specific jurisdiction under one of the bases of jurisdiction listed in Ohio's long-arm statute." *Conn v. Zakharov*, 667 F.3d 705, 717 (6th Cir. 2012). To establish specific jurisdiction over the Defendants, the Plaintiff must plead and prove three elements:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* at 713 (quoting *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002)). With respect to the reasonableness analysis, courts consider the following factors: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 554–55 (6th Cir. 2007).

### 2. The Complaint fails to allege sufficient facts establishing personal jurisdiction over Silverman.

Regardless of whether the claims against Silverman fail on their merits, the Court should dismiss these claims for lack of personal jurisdiction. Even assuming that the Court has personal jurisdiction over SOS, Plaintiff must separately allege (and prove) that the Court has personal jurisdiction over Silverman in his individual capacity. *See, e.g.*, *Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 740 (6th Cir. 2003) ("[T]he mere fact that the court has personal jurisdiction over the corporate entities does not by itself imply that the court also has personal jurisdiction over their officers."). The Complaint is devoid of any allegations showing that Silverman had sufficient contacts with the State of Ohio such that exercising jurisdiction over him would be appropriate under the Ohio long-arm statute or the due process clause.

Personal jurisdiction is inappropriate under both the due process clause and the Ohio long-arm statute, as there are no allegations that Silverman ever directed any tortious conduct toward Ohio or otherwise committed any acts or omissions enumerated in the long-arm statute. Silverman was not a party to the NDA—which was solely between SOS and PICA—and therefore is not bound by the forum selection clause or any waiver of personal jurisdiction contained therein. (*See*

13

Compl. ¶ 18 & Ex. 1.) There are no allegations Silverman intentionally directed any communications toward Ohio in furtherance of the alleged tortious conduct. *See, e.g.*, *Healthcare Capital, LLC v. HealthMed, Inc.*, 213 F. Supp. 2d 850, 860–62 (S.D. Ohio 2002) (finding that communications directed toward Ohio could not establish personal jurisdiction because communications did not form the "heart" of the plaintiff's causes of action). Similarly, there are no allegations that Silverman ever traveled to Ohio, conducted relevant business in Ohio, or otherwise had any contacts with Ohio with respect to the Plaintiff's causes of action.

Even if Silverman's alleged conduct comes within the scope of the Ohio long-arm statute, exercising jurisdiction over Silverman would be unreasonable in violation of due process. Silverman is a Florida resident, and allowing this suit to continue against him in an Ohio forum would be unduly burdensome. Ohio's interest in this lawsuit is minimal, as the alleged conduct at issue occurred outside of the state and had only a minimal impact on a global corporation that happens to be incorporated in Ohio. Assuming Plaintiff's claims against Silverman do not fail on their merits, Plaintiff can still obtain relief against Silverman in an alternative forum in Florida, and given PICA's corporate status and international presence—which includes having a regional headquarters in Tampa and Miami (*see* Ex. A, List of PICA Regional Headquarters)—litigation in Florida would not impose any substantive burdens on PICA. Further, Florida has a greater interest than Ohio in resolving whether a Florida resident has engaged in conduct that led to losses for a corporation that operates and has two regional headquarters in Florida.

Accordingly, regardless of whether the claims against Silverman fail on their merits, the Court should dismiss Silverman as a party for lack of personal jurisdiction.

## IV.   CONCLUSION

For the reasons stated above, the Court should dismiss all claims against Defendants SOS Security, LLC and Edward Silverman with prejudice for failure to state a claim. Alternatively, the Court should dismiss all claims against Silverman for lack of personal jurisdiction.

Respectfully submitted,

*/s/ Gregory D. Brunton*
Gregory D. Brunton    (0061722)
**GORDON & REES LLP**
41 South High Street, Suite 2495
Columbus, Ohio 43215
T: (614) 340-5558
F: (614) 360-2130
gbrunton@grsm.com

*Attorney for Defendants SOS Security LLC
and Edward Silverman*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was electronically filed with the U.S. District Court, Southern District of Ohio, Eastern Division, on August 20, 2019, and served upon all parties who have appeared in this matter and registered with ECF via the Court's electronic filing system. A copy will also be served via electronic mail upon the following:

Daniel N. Abraham
David I Shroyer
**Colley Shroyer & Abraham Co., LPA**
536 South High Street
Columbus, Ohio 43215
T: (614) 228-6453
F: (614) 228-7122
dabraham@csajustice.com
dshroyer@csajustice.com
*Attorneys for Plaintiff PICA Corporation*

*/s/ Gregory D. Brunton*
Gregory D. Brunton     (0061722)
