IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


PROFESSIONAL INVESTIGATING AND    :
CONSULTING AGENCY, INC.,          :
                                  :    Case No. 2:19-cv-03304
        Plaintiff,                :
                                  :    JUDGE ALGENON L. MARBLEY
    v.                            :
                                  :    Magistrate Judge Jolson
SOS SECURITY, LLC, et al.,        :
                                  :
                                  :
        Defendants.               :


## OPINION & ORDER

## I. INTRODUCTION

This matter is before the Court on two Motions: (1) Defendants SOS Security, LLC and
Edward B. Silverman's Motion to Dismiss [#7]; and (2) Defendant Rodolfo G. Diaz's Motion to
Dismiss [#8]. The Court will resolve both Motions without oral argument. For the reasons set
forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants SOS and
Silverman's Motion [#7] and **GRANTS** Defendant Diaz's Motion [#8].

## II. BACKGROUND

Plaintiff Professional Investigating and Consulting Agency, Inc. ("PICA") is an Ohio
corporation that provides security investigation, consulting, executive protection, and secure
transport services. (Doc. 2.) Defendant SOS Security, LLC ("SOS Security") is a foreign limited
liability company that also provides security related services. (*Id.*). At one time, however, SOS
Security lacked the full capabilities that PICA offered. (*Id.*)

To account for these deficiencies, Defendant Edward B. Silverman, SOS Security's CEO,
approached Defendant Rodolfo G. Diaz, PICA's Chief Operating Officer, around October 2014 to

1

discuss a potential business relationship between the two companies with the goal of SOS purchasing PICA. (*Id.*) Diaz persuaded PICA's shareholders that it was in the company's best interest to explore this venture. (*Id.*) Thus, as part of the acquisition process, PICA disclosed certain confidential information and trade secrets to SOS Security. (*Id.*) Prior to that, however, the two sides entered into a Confidentiality and Non-Disclosure Agreement (hereinafter, "NDA") which, among other things, prohibited SOS Security from soliciting or accepting work from clients that PICA would later disclose. (*Id.*)

Unbeknownst to PICA, the company alleges that Diaz and Silverman had concocted a scheme to steal PICA's customers and trade secrets. (*Id.*) This belief stems from the fact that on May 1, 2015, after SOS Security had obtained PICA's confidential information and trade secrets, Diaz abruptly resigned from PICA. (*Id.*) And, following this, Silverman informed PICA that SOS Security was putting the acquisition process on hold until the end of the year. (*Id.*)

Notwithstanding the above, SOS Security continued to work with PICA on various projects throughout Mexico, Colombia, Venezuela, and Brazil, which gave SOS direct access to PICA's customers. (*Id.*) Silverman had encouraged PICA to continue working with SOS Security based on the joint understanding that the acquisition process was merely postponed. (*Id.*) Consequently, SOS Security continued to benefit from PICA's services, such as PICA drafting and organizing business models to serve SOS's clients, PICA providing SOS with VIP treatment at the Latin America Regional Council Meeting in Bogota, and PICA performing work for a client -- Microsoft -- that both companies shared. (*Id.*). PICA asserts that it received no compensation in return for these services. (*Id.*)

On June 1, 2017, the date on which Diaz's covenant not to compete with or solicit PICA's employees or associates expired, SOS Security hired Diaz as its VP of Southeast Operations in

Latin America.  (*Id.*)  Two weeks after that, SOS Security announced that it was acquiring AS Solutions, a former partner of PICA, and a firm specializing in executive protection and secure transport services.  (*Id.*)  SOS Security never completed its acquisition of PICA.

PICA now files suit against SOS Security, Edward Silverman, and Rodolfo Diaz raising ten causes of action: **Count One** -- Breach of Contract (against SOS Security); **Count Two** -- Fraud in the Inducement (against SOS Security and Edward Silverman); **Count Three** -- Conspiracy to Commit Fraud (against SOS Security, Edward Silverman, and Rodolfo Diaz); **Count Four** -- Breach of Fiduciary Duty/Violation of O.R.C. § 1701.641 (against Rodolfo Diaz); **Count Five** -- Aiding and Abetting Breach of Fiduciary Duty (against SOS Security and Edward Silverman); **Count Six** -- Misappropriation of Trade Secrets/Violation of O.R.C. § 1333.61, et seq. (against SOS Security); **Count Seven** -- Tortious Interference with Business Relationships (against SOS Security); **Count Eight** -- Conspiracy to Tortiously Interfere with Business Relationships (against SOS Security, Edward Silverman, and Rodolfo Diaz); **Count Nine** -- Unfair Competition (against SOS Security); and **Count Ten** -- Quantum Meruit (against SOS Security). Ultimately, PICA maintains that Defendants utilized its trade secrets and confidential information to gain an unfair advantage and to solicit its customers.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b) provides for the dismissal of a complaint for, among other things, lack of personal jurisdiction and failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(2) and (6).

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for a failure to state a claim upon which relief can be granted, "[a]ll factual allegations in the complaint must be presumed true, and reasonable inferences must be made in favor of the non-moving party."

*Mitchell v. BMI Fed. Credit Union*, 374 F. Supp. 3d 664 (S.D. Ohio 2019) (quoting *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008)). The Court, however, does not have to "accept unwarranted factual inferences." *Id.* (quoting *Total Benefits*, 552 F.3d at 434). A complaint "must state more than a bare assertion of legal conclusions to survive a motion to dismiss." *Id.* (internal quotations and citations omitted). Stated differently, "[a] plaintiff's [f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (internal quotations and citations omitted).

## IV. ANALYSIS

### A. Defendants SOS Security and Edward Silverman's Motion to Dismiss [#7]

Defendants SOS Security and Edward Silverman move for the dismissal of Plaintiff's Complaint on six grounds. The Court will address each of these arguments, in turn, below.

#### 1. Whether Ohio's Uniform Trade Secrets Act Preempts Plaintiff's Tort-Related Claims

First, Defendants argue that all of Plaintiff's claims, other than its breach-of-contract claim (Count One) and misappropriation of trade secrets claim (Count Six) are preempted by Ohio's Uniform Trade Secrets Act ("OUTSA"), O.R.C. § 1333.61, et seq. Plaintiff concedes that the OUTSA preempts Counts Two, Five, and Nine.[1] Plaintiff, however, argues that Counts Three, Seven, Eight, and Ten are not based on the misappropriation of a trade secret.

Ohio Revised Code § 1333.67(A) instructs that the OUTSA "displace[s] conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret," except as provided in subsection (B). O.R.C. § 1333.67(A). Subsection (B), in turn, provides that the OUTSA does not affect any of the following: "(1) Contractual remedies, whether

---

[1] Accordingly, the Court **DISMISSES** Counts Two (Fraud in the Inducement), Five (Aiding and Abetting Breach of Fiduciary Duty), and Nine (Unfair Competition).

or not based on misappropriation of a trade secret; (2) Other civil remedies that are not based on misappropriation of a trade secret; [and] (3) Criminal remedies, including those in other sections of this chapter, whether or not based on misappropriation of a trade secret." O.R.C. § 1333.67(B). The statute goes on to define misappropriation as the following:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:

    a. Used improper means to acquire knowledge of the trade secret;

    b. At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;

    c. Before a material change of their position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

O.R.C. § 1333.61(B).

In *Stole Machinery Company, LLC v. RAM Precision Industries*, the Sixth Circuit held that "the OUTSA should be understood to preempt not only causes of action for misappropriation of trade secrets but also causes of action that are based in some way on misappropriation of trade secrets." 605 F. App'x 473, 484 (6th Cir. 2015). Further, that "[t]he test to determine whether a state law claim is displaced by [the] OUTSA is to determine whether the claims are no more than a restatement of the same operative facts that formed the bases of the plaintiff's statutory claim for trade secret misappropriation." *Id.* at 485 (internal quotations omitted). Applying this standard in that case, the Sixth Circuit found that the OUTSA preempted a party's claim for tortious interference with a business relationship, where the defendant had allegedly used the plaintiff's

confidential customer lists and technical information to solicit plaintiff's customers. *Id.* ("[W]hether the defendants were using wrongful means depends on whether they had used Stolle's customer lists and technical information without Stolle's consent—and this is, under OUTSA, squarely a matter of whether trade secrets have been misappropriated.").

Here, Count Three of the Complaint (Conspiracy to Commit Fraud) is predicated on the same facts that form the basis of Plaintiff's misappropriation claim. Indeed, Count Three alleges that Defendants conspired together to defraud Plaintiff into revealing its trade secrets. Still, Plaintiff argues that "the conspiracy to commit fraud extends beyond the misappropriation of trade secrets to Defendants' actions to encourage PICA to become involved in SOS' PICA Acquisition Process, knowing that SOS never intended to move forward with the acquisition." (*See* Doc. 10 at 10.) But this argument lacks merit, as the crux of Plaintiff's injury is still that it was misled into revealing confidential information.[2] Count Three is, therefore, nothing more than a restatement of the improper means that Defendants allegedly used to acquire Plaintiff's trade secrets. *See* O.R.C. § 1333.67(B)(2)(a). For this reason, the Court **DISMISSES** Count Three of the Complaint as being preempted by the OUTSA. *See Stolle*, 605 F. App'x at 486 ("Even though proof of conspiracy requires proving additional facts—a malicious combination of two or more persons

---

[2] Count Three of the Complaint, in relevant part, reads:

43. Defendant Diaz agreed and conspired with Defendants Silverman and SOS to assist Silverman and SOS, and did assist Silverman and SOS, in carrying out and perpetrating a fraud on PICA by, *inter alia*: (i) confirming, promoting and vouching for the purported validity and good faith of SOS and SOS' PICA Acquisition Process, including SOS' purported good faith interest in establishing a closer business relationship with, and purchasing, PICA; (ii) encouraging PICA to take all preliminary steps to sell itself to SOS (including, without limitation, signing the NDA and providing SOS with PICA's confidential information and trade secrets); and (iii) advising and assuring PICA that SOS would maintain inviolate PICA's confidential information and trade secrets, all of which Diaz and his co-conspirators knew was untrue.

causing injury—beyond the underlying unlawful act, the conspiracy claim is dependent on proof of the underlying act—here, misappropriation of trade secrets.") (internal citation omitted).

Counts Seven (Tortious Interference with Business Relationships) and Eight (Conspiracy to Tortiously Interfere with Business Relationships) are similarly predicated on the same facts that form the basis of Plaintiff's misappropriation claim. In Count Seven, Plaintiff alleges, in part, that SOS Security stole its clients by acquiring and misusing PICA's confidential information and trade secrets. Like in *Stolle*, this is "squarely a matter of whether trade secrets have been misappropriated," and is thus preempted by the OUTSA. *Id.* at 485 ("Stolle's claim for tortious interference with business relationships therefore essentially restates the operative facts of its claim for trade secret misappropriation under OUTSA, and it is preempted."). The Conspiracy claim in Count Eight, which mirrors Count Seven, fails, in part, for this same reason.

A portion of the allegations in Count Seven and Eight, however, are not based on the misappropriation of trade secrets. Namely, the assertion that SOS Security damaged and/or conspired to damage PICA's relationship with Microsoft by, among other things, disparaging PICA and taking credit for PICA's work. Because this claim has no relation to the information that PICA revealed pursuant to the NDA, this segment of Counts Seven and Eight survives preemption. Accordingly, the Court only **DISMISSES** Counts Seven and Eight **IN PART**.

Finally, the Court finds that the OUTSA does not preempt Plaintiff's Quantum Meruit claim in Count Ten. None of the allegations in Count Ten relate to the acquisition, disclosure, or use of Plaintiff's trade secrets. To the contrary, each of the allegations relate to the services and/or work that Plaintiff allegedly performed for SOS Security and its customers without being compensated in return. Hence, the Court will not dismiss Count Ten on preemption grounds.

In sum, the Court **DISMISSES** Counts Two, Three, Five, and Nine **IN FULL** and Counts Seven and Eight **IN PART**.

### 2. Whether Counts Seven and Eight are Barred by the Statute of Limitations

As an alternative ground for dismissing Counts Seven and Eight of the Complaint, Defendants argue that these claims are barred by the statute of limitations. Specifically, Defendants contend that Plaintiff's tortious interference claims are really defamation claims that should have been brought within one year of the alleged wrong.

The statute of limitations for a claim of tortious interference is four years. *Smith v. Nat'l W. Life*, 92 N.E. 3d 169, 173 (Oh. Ct. App. June 8, 2017). The statute of limitations for defamation, by comparison, is only one year. *Id.* at 171. When determining which statute of limitations applies, "courts must look to the actual nature or subject matter of the case, rather than the form in which the action is pleaded." *Kienow v. Cincinnati Children's Hosp. Med. Ctr.*, 2015 WL 6438985, at *2 (Ohio Ct. App. Oct. 23, 2015). Under Ohio law, courts recognize that, unlike defamation, "the nature of a tortious-interference claim goes beyond damage to reputation." *Id.* at *3. Indeed, "[t]he basic principle of such an action is that one who, without a privilege to do so, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship with another, or perform a contract with another is liable to the other for the harm caused thereby." *Id.* On this basis, the Ohio Court of Appeals, in *Kienow*, distinguished a tortious interference claim from a defamation claim and opted to apply the longer four-year statute of limitations. *Id.* ("Here, the tortious-interference claim does not hinge simply on Morris's disseminating information but on her hindering a prospective and known business relationship—Kienow's pending employment with Dayton's Children's. The claim alleged by Kienow is not of the same nature as a defamation claim. Ms. Morris did not simply say bad things about her, but, according to the complaint,

specifically and intentionally interfered with her prospective business relationship with Dayton Children's. Under these facts, we conclude that the complaint alleges a tortious-interference claim, and the four-year statute of limitations applies.").

Here, like in *Kienow*, the Court finds that the allegations in Count Seven and Eight of Plaintiff's Complaint allege a tortious interference claim, rather than just a defamation claim. *See id.* In these Counts, Plaintiff alleges that Defendants disparaged PICA's name and diminished PICA's work by taking credit for services they did not furnish to Microsoft, all in an effort steal Microsoft's business and damage PICA's relationship with Microsoft. As such, Plaintiff's allegations hinge not on mere reputational damage, but instead on Defendants specifically and intentionally damaging a prospective and known business relationship. Accordingly, Counts Seven and Eight of the Complaint are not barred by the statute of limitations, as the four-year statutory period applies.

### 3. Whether Plaintiff's Breach of Contract Claim Fails for Lack of Damages

Next, Defendants argue that Plaintiff's breach of contract claim in Count One of the Complaint fails because Plaintiff did not specifically plead the amount of damages it allegedly suffered or how SOS Security's conduct caused such damages.

To assert a breach of contract claim under Ohio law, a plaintiff must demonstrate: "(1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *Gerling & Associates, Inc. v. Odulair, LLC*, 2017 WL 2790669, at *7 (S.D. Ohio June 28, 2017). Damages for a breach of contract claim "are those which are the natural or probable consequence of the breach of contract or damages resulting from the breach that were within the contemplation of both parties at the time of the making of the contract." *Nako v. Consolidated Packaging Grp.*, 2018 WL 4300555 (S.D. Ohio

June 26, 2018) (quoting *The Toledo Grp., Inc. v. Benton Indus., Inc.*, 87 Ohio App. 3d 798, 623 N.E.2d 205, 211 (1993)). The "failure to allege cognizable damages compels the dismissal of [a] complaint." *Id.* (quoting *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 704 (6th Cir. 2005)). Hence, "[e]ven if damages are often not required to be pled with specificity or in detail, the standards articulated in *Twombly* and *Iqbal*, require that the claim set forth at least some factual basis upon which the existence of damages can be plausibly inferred." *Duro Corp. v. Canadian Standards Assoc.*, 2018 WL 3118275, at *4 (N.D. Ohio June 25, 2018).

Here, Count One of the Complaint alleges that SOS Security breached the parties' NDA by using PICA's confidential information and trade secrets to gain an unfair business advantage and to solicit PICA's customers, thereby damaging Plaintiff's business. (*See* Doc. 2.) Although Plaintiff does not specify which customers SOS Security solicited, or the extent of its alleged damages, at this stage, and accepting Plaintiff's allegations as true, the Court finds that Plaintiff has adequately pled a breach of contract claim that puts SOS Security on notice of the wrongs alleged, and that PICA was harmed as a result. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("As the Court held in *Twombly*, the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal citations omitted). Furthermore, the discovery process will shed additional light on the magnitude of Plaintiff's damages, if any.

### 4. Whether Plaintiff's Misappropriation of Trade Secrets Claim Fails for Lack of Damages

Like above, Defendants argue that Plaintiff's Misappropriation claim in Count Six of the Complaint fails because there are no plausible allegations of damages arising from this alleged conduct. But again, Count Six alleges that SOS Security misappropriated PICA's confidential information and trade secrets, improperly using them to compete against PICA, solicit its

customers, and steal business. The Court, therefore, finds that Plaintiff has adequately pled a misappropriation claim that puts SOS Security on notice of the wrongs alleged, and that PICA was harmed as a result.

### 5. Whether Plaintiff's Quantum Meruit Claim Fails as a Matter of Law

Defendants also argue that Plaintiff's Quantum Meruit claim in Count Ten fails as a matter of law. Specifically, Defendants maintain that the services PICA provided to SOS Security were done gratuitously with no expectation of being paid in return. Plaintiff disagrees and argues that it expected and should be compensated for the value of the services it rendered.

The doctrine of quantum meruit is "derived from the natural law of equity, the basic concept of which is that no one should be unjustly enriched who benefits from the services of another." *Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, 99 F. Supp. 3d 791, 807 (S.D. Ohio 2015). The elements of a quantum meruit claim are as follows: "(1) [v]aluable services were rendered or materials furnished, (2) for the person sought to be charged, (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him, (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff, in performing such services was expecting to be paid by the person sought to be charged." *Id.* at 807-08.

Here, Count Ten of the Complaint alleges that PICA rendered services and work for SOS Security -- including drafting plans and organizing business models to service SOS's clients and creating a logistics and Security Operations Center solution that could be leveraged across client requirements -- with the expectation that SOS would, in turn, complete its acquisition of PICA. (*See* Doc. 2.) Notably, after the acquisition process was placed on hold, Edward Silverman allegedly encouraged PICA to continue working with SOS Security, suggesting that the hold was

only temporary. Accepting Plaintiff's factual allegations as true and construing all reasonable inferences in Plaintiff's favor, the Court finds that SOS Security could have reasonably expected that PICA sought to be compensated for its services -- either through SOS completing its acquisition of PICA or monetarily if discussions were to break down. Accordingly, Plaintiff's Quantum Meruit claim in Count Ten does not fail as a matter of law.

**6. Whether the Court has Personal Jurisdiction over Defendant Edward Silverman**

Finally, Defendants assert that the Court does not have personal jurisdiction over Defendant Edward Silverman with respect to the remaining claim against him in Count Eight (Conspiracy to Tortiously Interfere with Business Relationships). Plaintiff argues that the Court has personal jurisdiction over Silverman because of the forum selection clause in the parties' NDA. Defendants, however, contend that the allegations in Count Eight fall outside the scope of the NDA.

When a party validly consents to the jurisdiction of a particular court in a forum selection clause, they waive their lack-of-personal-jurisdiction defense. *Traton News, LLC v. Traton Corp.*, 914 F. Supp. 2d 901, 907 (S.D. Ohio 2012). In determining the scope of a forum selection clause, the Court must apply principles of contract interpretation. *Id.* at 908 (citing *In re Delta Am. Re Ins. Co.*, 900 F.2d 890, 892-93 (6th Cir. 1990)). It follows, "[t]he Court must 'examine the substance of [Plaintiff's] claims as they relate to the precise language' of the forum selection clause." *Id.* (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389 (2d Cir. 2007)). A forum selection clause is unenforceable where the claims fall outside the scope of the agreement. *See Bracken v. DASCO Home Med. Equip., Inc.*, 954 F. Supp. 2d 686, 697 (S.D. Ohio 2013) ("Bracken's current claims under the ADA and Ohio anti-discrimination statute do not fall within the scope of the Agreement. The primary focus of the Agreement is confidentiality and

noncompetition . . . . Bracken's claims clearly do not challenge the confidentiality or noncompetition issues . . . . As such, the Court concludes that the forum selection clause is inapplicable and unenforceable in this matter.").

Even assuming that Defendant Silverman is a party bound by the NDA, the claims alleged against him in Count Eight fall outside the scope of the forum selection clause. The NDA's forum selection clause reads as follows:

> This Agreement shall be governed by and interpreted in accordance with the laws of the State of Ohio, exclusive of its conflicts of law rules. **_Any and all disputes arising under this Agreement_** shall be litigated exclusively in the federal or state courts located in Franklin County, Ohio exclusive of any other courts and the parties hereto, by entering into this Agreement, agree and consent to jurisdiction in said courts.

(*See* Doc. 2) (emphasis added). For a dispute to arise "under" this agreement means that it would have to relate to the interpretation or performance of the agreement. *See Cedars-Sinai Med. Ctr. V. Glob. Excel Mgmt., Inc.*, 2009 WL 7322253, at *5 (C.D. Cal. Dec. 30, 2009) ("At one extreme, forum selection clauses governing disputes 'arising under' the agreement are narrowly construed to apply only to claims relating to the interpretation or performance of the agreement."); *Traton News, LLC*, 914 F. Supp. 2d at 908 ("To 'arise out of' means 'to originate from a specified source.'") (quoting *Phillips*, 494 F.3d at 389); *Nanotex LLC v. Schroeter*, 2015 WL 9183426, at *2 (E.D. Mich. Dec. 17, 2015) ("Nanotex would have a strong argument if the forum selection clause was applicable only to claims 'arising under' the Agreement, a common and much narrower provision."). Here, the only reason that the OUTSA did not preempt Count Eight entirely was because part of this claim pertained to conduct unrelated to the receipt and use of confidential information covered under the NDA. As such, this claim necessarily falls outside the scope of the forum selection clause. Without any other ground raised to exercise personal jurisdiction over Defendant Silverman, the Court **DISMISSES** him from this action.

**B. Defendant Rodolfo Diaz's Motion to Dismiss [#8]**

Defendant Rodolfo Diaz moves for the dismissal of Plaintiff's Complaint arguing that it fails to state a claim against him upon which relief can be granted and that the Court lacks personal jurisdiction over him. Given that the Court already dismissed Count Three of the Complaint (Conspiracy to Commit Fraud), and because Plaintiff concedes that the OUTSA preempts Count Four (Breach of Fiduciary Duty),[3] the only remaining claim against Defendant Diaz is Count Eight (Conspiracy to Tortiously Interfere with Business Relationships), which was addressed above. Like Defendant Silverman, whether this case can proceed against Defendant Diaz on Count Eight turns on whether the forum selection clause in the parties' NDA gives the Court personal jurisdiction over Diaz. Because the Court has answered that question in the negative, Defendant Diaz is **DISMISSED** from this action.[4]

## V. CONCLUSION

For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants SOS and Silverman's Motion to Dismiss [#7] and **GRANTS** Defendant Diaz's Motion to Dismiss [#8]. Counts Two, Three, Four, Five, and Nine of the Complaint and Defendants Silverman and Diaz are hereby **DISMISSED** from this action.

**IT IS SO ORDERED.**

      **/s/ Algenon L. Marbley**
      **ALGENON L. MARBLEY**
      **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: January 14, 2020**

---

[3] Accordingly, the Court **DISMISSES** Count Four.

[4] Moreover, there are no allegations in the Complaint connecting Diaz to the alleged conspiracy to tortiously interfere with the PICA/Microsoft business relationship, which forms the basis of Count Eight.